IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No.  25-cr-315-LLA |
| | : | |
| ALONZO HINNANT | : | |
| | : | |
| Defendant. | : | |

## MOTION TO SUPPRESS FRUITS OF DNA SEARCH WARRANT AND REQUEST FOR *FRANKS* HEARING

Defendant Alonzo Hinnant, by and through his counsel, Michael E. Lawlor, and Brennan, McKenna & Lawlor, Chtd., respectfully moves to suppress the fruits of the March 5, 2025 Superior Court search warrant used to obtain a sample of his DNA. Mr. Hinnant also moves to suppress all evidence derived from the execution of this search warrant. In connection with this Motion, Mr. Hinnant requests an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).

I.   **Background and Procedural History**

Mr. Hinnant is charged by way of Indictment with the following offenses: possession with intent to distribute a mixture and substance containing cocaine base, fentanyl, and methyl fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Count One; offense date of March 4, 2025); using, carrying, and possessing a firearm during, in relation to, and in furtherance of a drug trafficking crime, in

1

violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Two; offense date of March 4, 2025); and carrying a pistol without a license (outside home or place of business), in violation of 22 D.C. Code § 4504(a)(1) (Count Three; offense date of April 29, 2025). (Indictment, ECF No. 15.) As is evident from the Indictment, the charges in this case relate to two separate incidents. Counts One and Two concern the March 4, 2025 execution of a search warrant at Apartment 103 of 4313 Wheeler Road in Southeast, D.C. Count Three relates to the April 29, 2025 warrantless arrest of Mr. Hinnant by members of MPD in the parking lot of 832 Barnaby Street, Southeast, D.C.[1]

As relevant for this Motion, on February 26, 2025, MPD Officer Nicholas Damron applied for and received a warrant to search the residence at Apartment 103, 4313 Wheeler Road, Southeast. On March 4, 2025 at approximately 5:24 p.m., MPD officers, including Officer Mark Minzak, responded to the address to execute the residential search warrant. Mr. Hinnant was the only person present in the apartment. Among other items, officers recovered from the apartment a firearm that was located on the floor behind the living room couch. On March 5, 2025, Officer Minzak

---

[1] The Government elected not to pursue charges against Mr. Hinnant in the aftermath of the execution of the residential search warrant on March 4, 2025. With respect to the April 2025 arrest, Mr. Hinnant was initially charged with CPWL in D.C. Superior Court. *See United States v. Hinnant*, No. 2025-CF2-004802. That charge was dismissed in favor of federal prosecution. On May 1, 2025, Mr. Hinnant was first charged in this Court by way of a Criminal Complaint. (ECF No. 1.) He made his initial appearance of May 5, 2025.

applied for and received a warrant to obtain a sample of Mr. Hinnant's DNA in the form of a buccal swab. *See* Ex. A. In his affidavit in support of the search warrant, Officer Minzak swore under oath that "there is probable cause to search the subject for a saliva sample containing DNA because there is a fair probability that the subject's DNA is evidence of the crime of Unlawful Possession of a Firearm (Prior Conviction), in violation of D.C. Code § 22-4503." The warrant was executed at 1:49 p.m. that same day. Law enforcement later compared the DNA sample obtained pursuant to the March 5 warrant to DNA extracted from swabs taken from the firearm.

At this time, Mr. Hinnant moves to suppress the fruits of the March 5 DNA search warrant.

## II. Legal Standard

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment further commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Id*. The Supreme Court has distilled three requirements for a warrant to issue under the Fourth Amendment:

> First, warrants must be issued by neutral, disinterested magistrates. Second, those seeking the warrant must demonstrate to the magistrate their probable cause to believe that the evidence sought will *aid in a particular apprehension or conviction for a particular offense.* Finally, warrants must particularly describe the things to be seized, as well as the place to be searched.

*Dalia v. United States*, 441 U.S. 238, 255 (1979) (internal citations omitted) (emphasis added).

As the Second Circuit has explained with respect to the particularity requirement of the Fourth Amendment,

> The particularity requirement has three components. First, a warrant must identify the specific offense for which the police have established probable cause. *See United States v. Bianco*, 998 F.2d 1112, 1116 (2d Cir. 1993) (warrant that contained no particular description of items and made no mention of any criminal statute or criminal conduct was "not supportable"), *abrogated on other grounds by Groh v. Ramirez*, 540 U.S. 551 (2004); *United States v. George*, 975 F.2d 72, 76 (2d Cir. 1992) (warrant authorizing search for evidence "relating to the commission of a crime" was overbroad because "[n]othing on the face of the warrant tells the searching officer for what crimes the search is being undertaken"). Second, a warrant must describe the place to be searched. *United States v. Voustianiouk*, 685 F.3d 206, 211 (2d Cir. 2012); 2 W. LaFave, Search and Seizure § 4.6(a) (5th ed. 2012) ("[G]eneral searches are prevented by the other Fourth Amendment requirement that the place to be searched be particularly described."). Third, the warrant must specify the "items to be seized by their relation to designated crimes." *United States v. Williams*, 592 F.3d 511, 519 (4th Cir. 2010); *see also United States v. Buck*, 813 F.2d 588, 590-92 (2d Cir. 1987) (finding that a warrant authorizing the seizure of "any papers, things or property of any kind relating to [the] previously described crime" failed the particularization requirement because it "only described the crimes — and gave no limitation whatsoever on the kind of evidence sought"). "[A]n otherwise unobjectionable description of the objects to be seized is defective if it is broader than can be

4

justified by the probable cause upon which the warrant is based." 2 W. LaFave, Search and Seizure § 4.6(a) (5th ed. 2012).

*United States v. Galpin*, 720 F.3d 436, 445-46 (2d Cir. 2013). *See also, e.g.*, *In re Search of*, 317 F. Supp. 3d 523, 527 n.3 (D.D.C. 2018) (Harvey, Mag. J.) (citing *Galpin*, 720 F. 3d at 446); *United States v. Sandalo*, No. 21-708-cr, 2023 U.S. App. LEXIS 14242, at *2 (2d Cir. June 8, 2023); *United States v. Smith*, No. 19-324 (BAH), 2021 U.S. Dist. LEXIS 131602, at *25 (D.D.C. July 15, 2021) ("A warrant authorizing the search of electronic data is sufficiently particular if its scope is limited to evidence pertaining to *a specific crime*.") (emphasis added); *United States v. Perez*, 712 F. App'x 136, 139 (3d Cir. 2017) ("a warrant must identify the specific offense for which the police have established probable cause") (internal quotation and citation omitted).

With respect to false statements in support of a search warrant, the Supreme Court has held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

*Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). "In this Circuit, the substantial preliminary showing necessary to trigger a *Franks* hearing requires a defendant to show that (1) the warrant affidavit contained false statements or omitted certain facts; (2) the false statements or omitted facts were material to the finding of probable cause; and (3) the false statements or omissions were made knowingly and intentionally, or with reckless disregard for the truth." *United States v. Guanghua*, No. 23-91-2 (CKK), 2025 U.S. Dist. LEXIS 148607, at *6 (D.D.C. Aug. 1, 2025).

### III.   Argument

The Court should hold a *Franks* hearing and suppress the fruits of the DNA search warrant because the affidavit contains materially and objectively false statements regarding Mr. Hinnant's criminal history, statements that, when excised, defeat probable cause with respect to the sole offense specified in the warrant. The affidavit in support of the DNA warrant states as follows: "A subsequent review of records revealed that Defendant Hinnant was previously convicted of a crime for which the penalty exceeds one year of imprisonment (2020 CF2 4007)." In a section labeled "PROBABLE CAUSE," the affidavit states that "there is probable cause to search the subject for a saliva sample containing DNA because there is a fair probability that the subject's DNA is evidence of the crime of Unlawful Possession of a Firearm (Prior Conviction), in violation of D.C. Code § 22-4503." The warrant itself, which was issued on the basis of the affiant's sworn statements, reflects a

6

finding of probable cause that evidence of a violation of "Unlawful Possession of a Firearm (Prior Conviction) in violation of 22 D.C. Code Section 4503" will be found in Mr. Hinnant's DNA.

The affiant's statement concerning Mr. Hinnant's criminal history is false. As of March 5, 2025, Mr. Hinnant *had not* been convicted of any crime punishable by imprisonment for a term exceeding one year. In 2020-CF2-4007, the case cited by the affiant, Mr. Hinnant was found guilty of the *misdemeanor* offense of *attempted* CPWL, which is punishable up to 180 days of imprisonment.[2] *See* 22 D.C. Code §§ 4504(a) and 1803. The Government's own filings in this case demonstrate the falsity of the affiant's statement. *See* United States' Memorandum in Support of Pretrial Detention, ECF No. 6 at 15 ("HINNANT does not have any felony convictions. His conviction for Attempted Carrying a Pistol Without a License in D.C. Superior Court Case Number 2020 CF2 4007 was the result of a plea to the misdemeanor lesser-included offense.") (citing Pretrial Services Report).

The false statement is also material. Here, the crime as to which the affiant represented that he had established probable cause is "Unlawful Possession of a Firearm (Prior Conviction), in violation of D.C. Code § 22-4503." The statute states as follows: "No person shall own or keep a firearm, or have a firearm in his or her

---

[2] In that case, Mr. Hinnant was sentenced under the Youth Rehabilitation Act to a term of probation. Mr. Hinnant completed his term of probation, and the conviction was set aside.

7

possession or under his or her control, within the District of Columbia, if the person: (1) Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year[.]" 22 D.C. Code § 4503(a)(1). The inclusion of the false statement misled the reviewing judicial officer into concluding that Mr. Hinnant was in fact prohibited from possessing a firearm due to a prior conviction for a crime punishable by imprisonment for a term exceeding one year. The false statement was therefore essential to establishing probable cause to believe that Mr. Hinnant's DNA would provide evidence of a violation of the DC felon in possession statute. In fact, Mr. Hinnant's DNA *could not* provide evidence of a violation of that statute because he had not been convicted of a predicate felony offense. Without the false statement, the affidavit fails to set forth probable cause to believe that evidence of a violation of the felon in possession statute will be found in Mr. Hinnant's DNA.

Third, at a minimum, the affiant made the false statement with reckless disregard for the truth. Officer Minzak has been employed as an MPD officer for over 17 years and was, at least at one time in his career, assigned to a gun recovery unit. *See, e.g.*, 2/1/2021 Motions Hearing Transcript, *United States v. Parker*, No. 19-cr-127-TNM (formerly EGS), ECF No. 73 at 15-16 (as of the date of that hearing, Officer Minzak had been employed by MPD for "[o]ver 13 years" and had been involved in "easily over a hundred and fifty" gun recoveries). Surely, Officer Minzak was familiar with common D.C. firearms offenses and the penalties they carry. As

reflected in a [Memorandum](#) issued by the District of Columbia Sentencing Commission, the misdemeanor offense of Attempted CPWL is the second most common D.C. gun registry eligible offense. It is therefore not the case that Officer Minzak provided representations about Mr. Hinnant's criminal history with respect to an obscure or rarely charged criminal offense. Officer Minzak cited a specific case number. A review of the record in that matter would easily show that Officer Minzak's statement in the affidavit was false. Mr. Hinnant was arrested at around 5:24 p.m. on March 4, 2025. Officer Minzak had ample time ensure the accuracy of his representations before applying for the DNA warrant the next day.

Moreover, on March 7, 2025, *two days* after Officer Minzak swore out his affidavit in support of the DNA search warrant, Agent Lohman of the ATF applied for a federal warrant to search three cell phones that had been seized during the execution of the search warrant at Apartment 103. Notably, Agent Lohman *did not* represent that there was probable cause to believe that evidence of a violation of the federal felon in possession statute would be found on the target cell phones. And while Agent Lohman's affidavit makes reference to the firearm found in Apartment 103, Agent Lohman's affidavit does not contain the false representation that Mr. Hinnant had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. Additionally, the Government has not charged Mr. Hinnant with being a felon in possession of a firearm precisely because such a charge

9

would be invalid as a matter of law and fact. The ease with which Officer Minzak's statement can be proven false provides strong evidence that the statement was made at a minimum with a *mens rea* of recklessness. The Court should therefore hold a *Franks* hearing and suppress the fruits of the DNA search warrant.

## CONCLUSION

For the reasons stated above and those to be presented at the motions hearing, this Court should hold a *Franks* hearing with respect to the March 5, 2025 DNA search warrant and suppress the fruits of that warrant.

Respectfully submitted,

_____/s/_____
Michael E. Lawlor
Brennan, McKenna & Lawlor, Chtd.
6305 Ivy Lane, Suite 700
Greenbelt, Maryland 20770
(301) 474-0044
mlawlor@brennanmckenna.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 10th day of December, 2025, the foregoing was served on all parties via ECF.

                                                                                                             \_\_\_\_\_/s/_____
                                                                                                                Michael E. Lawlor