**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | **Case No. 25-CR-315 (LLA)** |
| | : | |
| ALONZO HINNANT | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' OMNIBUS RESPONSE IN OPPOSITION TO DEFENDANTS' PRETRIAL MOTIONS

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia and undersigned counsel, respectfully files this Omnibus Response in Opposition to Defendant Alonzo HINNANT's Motion to Suppress Fruits of Warrantless Search and Seizure (Docket Entry 19) (hereinafter "HINNANT Search"); Motion to Sever Counts (Docket Entry 20) (hereinafter "HINNANT Sever"); Motion to Suppress Fruits of Residential Search Warrant (Docket Entry 21) (hereinafter "HINNANT Residential"); Motion to Suppress Fruits of DNA Search Warrant and Request for Franks Hearing (Docket Entry 22) (hereinafter "HINNANT DNA"); and Motion to Suppress Fruits of Cell Phone Search Warrant (Docket Entry 23) (hereinafter "HINNANT Cell Phone), and states as follows.

## PROCEDURAL POSTURE

On October 3, 2025, a grand jury sitting in the District of Columbia returned an Indictment in this case charging Defendant with Possession with Intent to Distribute Cocaine Base, Fentanyl, and Methyl Fentanyl on March 4, 2025, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C); Using Carrying and Possessing a Firearm During, in Relation to, and in Furtherance of a Drug Trafficking Offense on March 4, 2025, in violation of 18 U.S.C. § 924(c)(1)(A)(i); and Carrying a Pistol

1

Without a License on April 29, 2025, in violation of 22 D.C. Code § 4504(a)(1). (Docket Entry 15).

On November 19, 2025, the parties were before the Court for a status conference during which time the Court set the case for trial on February 17, 2026. Minute Entry, 11/19/25. During that same hearing, the Court established that pretrial motions would be due by December 4, 2025. Id. On December 8, 2025, HINNANT filed an unopposed motion for an extension of time, requesting that pretrial motions be due on December 10, 2025. (Docket Entry 18). That motion was granted, nunc pro tunc. Minute Order, 12/8/25. On December 10, 2025, HINNANT filed the aforementioned motions to sever counts and suppress evidence. (Docket Entries 19, 20, 21, 22, and 23). This omnibus opposition follows.

## ARGUMENT

## I.    MPD OFFICERS' *TERRY* STOP AND PROTECTIVE PATDOWN OF HINNANT WAS SUPPORTED BY REASONABLE ARTICULABLE SUSPICION THAT HINNANT WAS CARRYING A FIREARM

### A.    APPLICABLE LEGAL STANDARD

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. CONST. amend IV. The Fourth Amendment requires that "all seizures, even ones involving 'only a brief detention short of traditional arrest,' be founded upon reasonable, objective justification." United States v. Gross, 748 F.3d 784, 786 (D.C. Cir. 2015) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975)). The Supreme Court has declared that a seizure occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of the citizen." Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968). A seizure of a person only occurs when 1) the person is restrained by police through the use of

willful physical force intended to effectuate restraint, or 2) the person actually submits to a display or show of police authority sufficient to cause a reasonable person to believe that he was not free to terminate the encounter with police. See California v. Hodari D., 499 U.S. 621, 626-28 (1991) (seizure under the Fourth Amendment occurs either upon "a laying on of hands or application of physical force to restrain movement" or actual submission to a show of authority); Brower v. Inyo, 489 U.S. 593 596-97 (1989) (a violation of the Fourth Amendment occurs when there is an "intentional acquisition of physical control," and a "Fourth Amendment seizure . . . [occurs] only when there is a governmental termination of freedom of movement through means intentionally applied").

If a police officer develops reasonable articulable suspicion that an individual is engaged in criminal activity, the officer may briefly detain the individual and investigate that criminal activity – including by "patting down" or "frisking" that individual for weapons or other contraband. Terry, 392 U.S. at 19-24. As Judge Contreras has noted, Terry

> permits a police officer to (1) briefly stop and detain a person for investigative purposes if the officer has a reasonable suspicion that "criminal activity may be afoot," and (2) conduct a limited pat-down search if the officer has a reasonable suspicion that the person is "armed and presently dangerous to the officer or to others."

United States v. Johnson, 365 F. Supp. 3d 89, 96 (D.D.C. 2019) (Contreras, J.) (quoting Minnesota v. Dickerson, 508 U.S. 366, 372-73 (1993); Terry, 392 U.S. 24, 26, 30).

An officer may frisk or pat down an individual when the officer has a "reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." Michigan v. Long, 463 U.S. 1032, 1049-50 (1983) (internal quotation marks omitted) (quoting Terry, 392 U.S. at 21). "The reasonableness of a frisk . . .

3

depends on 'whether a reasonably prudent [officer] in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" United States v. Washington, 559 F. 3d 573, 576 (D.C. Cir. 2009) (quoting Long, 463 U.S. at 1050) (bracketed language in original).

This limited stop and search for weapons, commonly referred to as a "Terry stop," "require[s] only that officers have a 'minimal level of objective justification.'" United States v. Goddard, 491 F.3d 457, 460 (D.C. Cir 2007) (quoting INS v. Delgado, 466 U.S. 210, 217 (1984)) (emphasis added). The Supreme Court has repeatedly articulated that "[t]the touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" Pennsylvania v. Mimms, 434 U.S. 106, 108-09 (1977) (quoting Terry, 392 U.S. at 19). In this context, reasonableness "depends 'on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" Id. at 109 (quoting Brignoni-Ponce, 422 U.S. at 878). As articulated by the D.C. Circuit, "a police officer [who] has a reasonable articulable suspicion 'that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others' . . . may conduct a limited protective search 'to determine whether the person is in fact carrying a weapon.'" United States v. Askew, 529 F.3d 1119, 1126 (D.C. Cir. 2008) (en banc) (quoting Terry, 392 U.S. at 24).

Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence" and "obviously less demanding than that for probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989). "The concept of reasonable suspicion, like probable cause, is not 'readily, or even usefully, reduced to a neat set of legal rules.'" Id. (quoting Illinois v. Gates, 462 U.S. 213, 232 (1983)). "[T]he reasonable suspicion standard 'does not deal with hard certainties,' but rather with 'common sense conclusions about human behavior.'" United States v. Murray, 548

F. Supp. 3d 741, 747 (N.D. Ill. 2021) (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

The D.C. Circuit holds that, when determining whether a Terry stop is supported by reasonable suspicion, the "Court does not separately scrutinize each factor relied upon by the officer conducting the search." United States v. Edmonds, 240 F.3d 55, 61 (D.C. Cir. 2001) (citing Sokolow, 490 U.S. at 8-9). Individualized and separate scrutiny is inappropriate for the simple reason that "[a]n officer on the beat does not encounter discrete, hermetically sealed facts." Id. (emphasis added).

As such, "the question of whether reasonable suspicion existed can only be answered by considering the totality of the circumstances as the officer on the scene experienced them." Id. at 59-60 (citing United States v. Clark, 24 F.3d 299, 301-03 (D.C. Cir. 1994) ("The evidence giving rise to suspicion must not be dissected and viewed singly, but taken as a whole; and it must be viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training'") (internal quotation and citation omitted)). "An officer's training and experiences enable him to 'draw[ ] inferences and make[ ] deductions' from seemingly innocuous facts—'inferences and deductions that might well elude an untrained person.'" Id. at 60 (quoting Cortez, 449 U.S. at 418). Applying this analysis, the D.C. Circuit clearly holds that "even though a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors—especially when viewed through the eyes of an experienced officer—may." Id.

## B.    THE **TERRY** STOP WAS SUPPORTED BY REASONABLE ARTICULABLE SUSPICION THAT HINNANT WAS ARMED.

HINNANT argues that that the fruits of the April 29, 2025, stop and frisk must be suppressed under the Fourth Amendment. HINNANT Search, at 1-7. This argument is without merit.

On April 29, 2025, MPD Officers Finn and Griffin were on patrol in Patrol Service Area 706 in a marked MPD cruiser. While on patrol, Officers Finn and Griffin drove into the parking lot adjacent to 832 Barnaby Street, Southeast. That address is associated with a large, multi-building apartment complex known as the Highland Terrace apartments.  As the officers pulled into the parking lot, they observed multiple individuals congregating around lawn chairs holding plastic cups. The officers observed an open bottle of Sutter Home wine and an open bottle of Don Julio tequila in the individuals' immediate vicinity. The officers saw that one of the men, later identified as HINNANT, discarded his plastic cup immediately upon seeing the marked patrol car.

It is a violation of 25 D.C. Code § 1001(a) to consume alcohol, or possess an open container of alcohol, in a public place.  This violation is a misdemeanor crime punishable by up to 60 days of imprisonment. Id. § 1001(d).  Thus, Officers Finn and Griffin had probable cause to believe that a crime was being committed when they by observed HINNANT with a plastic cup near open bottles of alcohol and further observed that he discarded his cup when the officers arrived.

Officers Finn and Griffin stopped their cruiser, got out, and approached the group. As they were exiting their cruiser, Officer Griffin saw that HINNANT had a visible, rectangular object in the waistband of his shorts. The object is visible on Officer Griffin's BWC, displayed below and outlined in red.



The object observed by Officer Griffin was consistent with the size and shape of a handgun, which officers know to be carried in the waistband area. The observation of this object provided officers with a "reasonable belief" based on "specific and articulable facts" that HINNANT may be armed with a handgun. See Long, 463 U.S. at 1049-50. This observation was sufficient for a prudent officer to detain HINNANT and conduct a brief, protective pat down to determine whether the object was, in fact, a firearm. Washington, 559 F. 3d at 576; see also Goddard, 491 F.3d 457, 460 (D.C. Cir 2007); Johnson, 365 F. Supp. 3d at 96.

Officer Griffin performed a protective pat down and felt what he immediately recognized to be a firearm. Officer Griffin gave the pre-determined codeword for the presence of a firearm and Officers Finn and Griffin detained HINNANT in handcuffs. The rectangular object is also visible in Officer Finn's BWC as he was detaining HINNANT. After HINNANT was detained, Officer Finn removed a black handgun fitted with an extended, high-capacity magazine from the exact location in the front of HINNANT's shorts where the protruding object was visible.





The <u>Terry</u> stop in this case was supported by reasonable articulable suspicion.  First, the officers observed HINNANT and others apparently imbibing from an open container of alcohol and, upon exiting their squad car, observed a firearm-shaped bulge in HINNANT's waistband. This was sufficient cause for a reasonably prudent officer to believe that HINNANT was armed and dangerous, and gave rise to a protective pat down to determine whether HINNANT was carrying a weapon.

## II.   THE COUNTS WERE PROPERLY JOINED IN THE AND THERE IS NO LEGAL BASIS TO SEVER THEM

Defendant HINNANT has moved to sever Counts One and Two of the Indictment from Count Three on grounds that joinder of these similar offenses was either improper under Rule 8 or

prejudicial under Rule 14. <u>Motion to Sever</u>, EFC No. 20. As discussed more fully below, neither argument warrants severance. The first two counts allege that on March 4, 2025, HINNANT possessed a controlled substance with intent to distribute it and further possessed a firearm in relation to a drug trafficking crime. The third count alleges he carried a pistol without a license on April 29, 2025, just weeks after the offenses alleged in Counts One and Two. <u>Id</u>. The judicial and prosecutorial economy of trying the three offenses together satisfies Rule 8's joinder requirements and HINNANT has not overcome this economy by establishing prejudice under Rule 14.

## A. RULE 8 ALLOWS JOINDER OF COUNTS ONE THROUGH THREE FOR JUDICIAL AND PROSECUTORIAL ECONOMY

### 1. Standard of Law Under Rule 8

Charged offenses are properly joined in a single indictment if they "are of the same or similar character or are based on the same act or transaction or are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8. The term "similar character" captures offenses that are "nearly corresponding, resembling in many respects, somewhat alike, or having a general likeness." <u>United States v. Treadwell</u>, 566 F. Supp. 80, 86 (D.D.C. 1983). "The term 'transaction' has been interpreted to comprehend a series of many occurrences depending not so much upon the immediateness of their connection as upon their logical relationship." <u>Id</u>. The primary purpose of joinder is to ensure that a given transaction need only be proved once. <u>Id</u>. Accordingly, "Rule 8 has been construed liberally in favor of joinder." <u>United States v. Gooch</u>, 655 F.3d 1318, 1326 (D.C. Cir. 2012). Courts allow joinder of counts meeting Rule 8's definition "even if the claims are entirely unrelated to each other." <u>Id</u>. at 1325; <u>United States v. Wilkins</u>, 538 F.Supp. 49, 87 (D.D.C. 2021).

*United States v. Browne* demonstrates the good sense of trying offenses involving common

instrumentalities together, even when the offenses are unrelated. 953 F.3d 794, 799-800 (D.C. Cir. 2020).[1] There, the D.C. Circuit found no error in the district court's failure to *sua sponte* sever the defendant's kidnapping charge from his charge of unlawful possession with intent to distribute marijuana. Id. In that case, the kidnapping ensued after Browne ordered a Lyft share ride on December 11, 2017, to drive him from his apartment to a McDonalds. Id. at 797. When Browne entered the Lyft, he smelled of marijuana. Id.  After arriving at the McDonalds, the Lyft remained in the parking lot for over seventeen minutes before Browne returned and placed a suitcase in the trunk. Id. Browne then asked the Lyft driver to take him home, but the driver refused, at which point, Browne put a gun to the driver's head and ordered him to drive back to Browne's apartment. Id. Later that evening, police arrested Browne at his apartment, which smelled like marijuana. Id. at 798.  The next day, officers obtained and executed a search warrant for the apartment where they located 78 pounds of marijuana, tools of the drug trade, and seven suitcases and other containers. Id. In finding no error under Rule 8, the D.C. Circuit noted "the presence of suitcases during the kidnapping and at the apartment meant… the charges could be seen as connected by those common items and their evident utility in transporting marijuana." Id. at 800.

Similarly, in *Wilkins*, the district court denied the defendant's motion to sever his sex trafficking by force, fraud, or coercion charges from the assault charges brought against him. United States v. Wilkins, 538 F. Supp. 3d 49, 86-87 (D.D.C. 2021). There, the defendant contended there was no connection between his sex trafficking acts and the physical assaults of one of his sex trafficking victims, which he characterized as acts of domestic violence in their personal intimate

---

[1] While Browne's severance issue was reviewed under the "plain error" standard because he failed to object to joinder before trial, the court nonetheless stated, "there is no plain error here, and indeed we are not concluding that there was error at all in the district court's failure to sua sponte sever Browne's charges under Rule 8(a) or Rule 14." Browne, 953 F.3d at 800 (emphasis added). Joinder decisions under Rule 8 are typically reviewed under a *de novo* standard. United States v. Gooche, 665 F.3d 1318, 1325 (D.D.C. 2012).

relationship. Id. at 71.  The court disagreed, citing a body of case law holding that threats and acts of violence can constitute coercion to cause the victims to engage in commercial sex acts. Id. These acts were also admissible under Federal Rule of Evidence 404(b). Id. at 88.  As a result, the court noted that "separate juries would still be presented with the same evidence in each trial through the operation of [404(b)], creating an 'unnecessary waste of judicial, prosecutorial and civic effort, resources and time.'" Id. (quoting Treadwell, 566 F.Supp. at 87).[2]

Simply put, judicial economy favors trying logically related counts together.

### 2.    Count Three was Properly Joined to Counts One and Two under Rule 8.

HINNANT argues that his possession of a firearm without a license is so unrelated to his possession of a firearm in furtherance of a drug trafficking offense and drug charge that it requires the burden of a separate trial. Not so. HINNANT is an alleged drug trafficker who ostensibly uses firearms to further his illegal trade. "Firearms . . .  are often used in the trafficking of drugs for protection and to reduce the risk of robberies or assaults (which are common); to protect [traffickers], their narcotics, and proceeds; and to maintain control over the areas in which they distribute narcotics." ECF No. 32 at4.

On March 4, 2025, MPD executed a search warrant at 4313 Wheeler Road, Southeast, Apartment 103, and located distribution quantities of cocaine base and fentanyl as well as a Glock .40 caliber semi-automatic handgun. At the time, HINNANT was the only person in the apartment and the semi-automatic handgun was tucked behind the couch near where HINNANT stood. Officers seized the drugs and the gun. They later processed the recovered firearm for DNA analysis. The magazine returned positive results for HINNANT.[3]   HINNANT has moved to

---

2 The Wilkins Court was discussing the overlapping evidence in the context of its Rule 14 analysis, but the principles of judicial economy of presenting overlapping evidence in one trial apply with equal or greater force to Rule 8.

3 In his motion, HINNANT argues that the DNA testing was inconclusive due to the presence of more donors than could be interpreted according to laboratory protocols. However, the DNA Analysis report states for the magazine

suppress those results. <u>HINNANT DNA</u>. Officers also located a Glock 9mm magazine containing approximately 9 rounds of ammunition inside a jacket recovered from the living room.

Weeks later, on April 29, 2025, MPD patrol officers located HINNANT in the parking lot adjacent to 832 Barnaby Street, Southeast. This location is approximately half a mile from the apartment on Wheeler Road. HINNANT was congregating with others and demonstrated behavior consistent with public consumption of alcohol in violation of 25 D.C. Code § 1001(a). As officers approached HINNANT, they observed a visible, rectangular object in the waistband of his shorts, necessitating a protective pat down. Officers located a Glock, 9mm semi-automatic handgun. Glock is the same manufacturer of the semi-automatic handgun located near HINNANT during execution of the search warrant at Wheeler Road.

These facts supporting joinder in HINNANT's case mirror the facts in *Browne* that warranted joinder of the defendant's kidnapping and drug distribution offenses. <u>Browne</u>, 953 F.3d at 799-800). Like in *Browne*, HINNANT's offenses are connected by a common item and its utility in distributing narcotics. In *Browne*, the defendant placed a suitcase in his kidnapping victim's car, and officers later located suitcases at his apartment with marijuana. <u>Id</u>. at 798. In comparison, HINNANT carried a Glock semiautomatic firearm with him half a mile from the apartment where he was located with another Glock semiautomatic firearm and drugs. Like Browne's suitcases, HINNANT's firearms are useful in narcotics distribution. Like in *Wilkins*, where the defendant's physical assaults of the victim constituted 404b evidence of his human trafficking offenses against the victim, HINNANT's carrying of the second firearm without a license is 404b evidence to his use of the first firearm in furtherance of drug trafficking. It follows that judicial and prosecutorial economy warrant a single trial for HINNANT's three offenses.

---

recovered that "the mixed DNA profile is at least 160 million times more likely if it originated from HINNANT and three unknown individuals than if it originated from four unknown individuals."

### B.  HINNANT HAS NOT ESTABLISHED PREJUDICE WARRANTING SEVERENCE UNDER RULE 14

HINNANT next hypothesizes that, even if his offenses were properly joined, he would nonetheless be prejudiced by having the evidence of these offenses presented in the same trial. His argument is unavailing. HINNANT has not met his burden of establishing he would be unable to have a fair trial. If anything, his possession of a firearm on April 29th, as alleged in Count Three, is admissible 404(b) evidence of the crimes alleged in Counts One and Two. Government's 404(b) Notice, ECF No 29. HINNANT is not prejudiced by a single trial.

#### 1.  Standard of Law Under Rule 14

Rule 14 allows severance of properly joined counts if joinder prejudices the defendant. "The defendant carries the burden of demonstrating prejudice and that he will be unable to have a fair trial unless the counts are severed." Wilkins, 538 F. Supp. 3d at 87.  Severance under Rule 14 "is the exception rather than the rule…" and is not required even if prejudice is shown. United States v. Tucker, 12 F.4th 804, 825 (D.C. Cir. 2021). "Severance is only proper when there is a serious risk that without severance the jury will be unable to make a reliable judgment about guilt or innocence." Wilkins, 538 F. Supp. 3d at 87.

#### 2.  HINNANT Has Not Shown that Joinder Prejudices His Ability to Have a Fair Trial.

HINNANT argues that the recovery of a firearm from his person will cause the jury to infer he "has a criminal disposition and that he therefore possessed the firearm and drugs recovered from the apartment on March 4." Motion to Sever, Docket No. 20. This argument is unconvincing. HINNANT has placed his knowledge and intent at issue. On April 29, 2025, HINNANT possessed a Glock, 9mm semi-automatic handgun. On March 4, 2025, officers located a Glock, .40 caliber semi-automatic handgun and distribution quantities of narcotics in an apartment in which HANNANT was located. They also found a Glock 9mm magazine with 9 rounds of ammunition

in a jacket within the apartment. The .40 caliber Glock, 9mm caliber Glock, Glock 9mm magazine, and 9 rounds of ammunition are all tools of the drug trade. They further demonstrate HINNANT's knowledge of how to acquire a firearm, his familiarity and comfort with firearms, his desire to possess firearms, his affinity for Glock semi-automatic firearms, and a slew of other permissible considerations under Federal Rule of Evidence 404(b). The fact that he possessed the Glock 9mm firearm on April 29, 2025, also links him to the 9mm Glock magazine and the Glock firearm recovered on March 4, 2025.  Under the facts of this case, a jury can reasonably infer that the defendant possessed the Glock firearm and the Glock 9mm magazine on March 4, 2025, from the evidence that he possessed a Glock 9mm firearm just weeks later. Indeed, the D.C. Circuit routinely allows other crimes of firearm possession as 404(b) evidence demonstrating knowing possession and absence of mistake. See, e.g., United States v. Moore, 75 F. Supp. 3d 444, 451-52 (D.D.C. 2014) (finding prior unlawful possession of a firearm evidence admissible under Rule 404(b) to show intent or lack of mistake); United States v. Williams, 507 F.Supp.3d 181, 191 (D.D.C. 2020) ("The D.C. Circuit has consistently allowed the admission of other crimes evidence related to possession of drugs and firearms under Rule 404(b) to demonstrate knowing possession and absence of mistake.").

Even if this Court were to sever Counts One and Two from Count Three, both juries would hear evidence of HINNANT's possession of the 9mm Glock on April 29, 2025. Therefore, he is not prejudiced by the presentation of this evidence in a single trial.

## III.    SEARCH WARRANTS 2025 CSWSLD 000787, 2025 CSW 00896, AND 25-SW-54 WERE SUPPORTED BY PROBABLE CAUSE, WERE PARTICULAR AND NOT OVERBROAD, AND LAW ENFORCMENT RELIED ON THEM IN GOOD FAITH.

### A.    STANDARD OF LAW

1.     **Probable Cause**

The Fourth Amendment requires that search warrants be supported by probable cause and state with particularity the places that will be searched and the things that will be seized. U.S. CONST. Amend. IV. "The law is clear that an affidavit in support of a warrant application 'must provide the magistrate with a substantial basis for determining the existence of probable cause,' and it cannot consist of 'wholly conclusory statement[s].'" United States v. Manafort, 314 F. Supp. 3d 258, 266 (D.D.C. 2018) (quoting Gates, 462 U.S. at 239). "The proponent of a motion to suppress bears the burden of establishing that his Fourth Amendment rights were violated by the challenged search or seizure." Id. at 263 (citing Rakas v. Illinois, 439 U.S. 128, 130 n.1 (1978)). "'In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Gates, 462 U.S. at 231 (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)). As Gates reiterated, "'[t]he process does not deal with hard certainties, but with probabilities. . . [or] common-sense conclusions about human behavior[.]'" Id. (quoting United States v. Cortez, 449 U.S. 411, 418 (1981)).

2.     **Particularity/Overbreadth**

Even if a search warrant is supported by probable cause, it will not pass Constitutional muster if it does not describe, with particularity, the location of the search and the things to be searched for and seized. Groh v. Ramirez, 540 U.S. 551, 557-65 (2004). "The Fourth Amendment's particularly requirement has three components: a warrant 'must identify the specific offense' for which law enforcement has established probable cause; it must 'describe the place to be searched'; and it must 'specify the items to be seized by their relation to designated crimes.'" In the Matter of Search of [Redacted] Washington, District of Columbia, 317 F. Supp 3d 523, 527

n.3 (D.D.C. 2018) (quoting United States v. Galpin, 720 F.3d 436, 446 (2d Cir. 2013); United States v. Williams, 592 F.3d 511, 519 (4th Cir. 2010)). The particularity requirement not only prevents against general searches, but also ensures that the officer is possessed of lawful authority to conduct the search. See, e.g., Maryland v. Garrison, 480 U.S. 79, 84 (1987); Marron v. United States, 275 U.S. 192, 196 (1927). "'Specificity has two aspects: particularity and breadth. Particularity is the requirement that the warrant must clearly state what is sought. Breadth deals with the requirement that the scope of the warrant be limited by the probable cause on which the warrant is based.'" Manafort, 314 F. Supp. 3d at 263-64 (quoting United States v. Hill, 459 F.3d 966, 973 (9th Cir. 2006); United States v. Towne, 997 F.2d 537, 544 (9th Cir. 1993)).

Notwithstanding the particularity requirement, warrants authorizing the search of electronic data are not "overbroad" simply because they allow law enforcement to search the entirety of that data for evidence of a specified criminal offense. See United States v. Williams, 592 F.3d 511, 521-23 (4th Cir. 2010) (noting that "the sheer amount of information contained on a computer does not distinguish the authorized search of the computer from an analogous search of a file cabinet containing a large number of documents"); see also United States v. Skinner, 2021 WL 1725543, at **15-16 (E.D. Va. 2021); United States v. Karrer, 260 F. App'x 157, 161 (3d Cir. 2012) (citations omitted). Moreover, when executing such a warrant, law enforcement is entitled to seize evidence of non-specified criminal activity that is observed in "plain view" while searching for evidence of specified criminal activity. Williams, 592 F.3d at 521-23 (citing Horton v. California; 496 U.S. 128, 136 (1990); Andresen v. Maryland, 427 U.S. 463, 482 n.11 (1976)); Karrer, 260 F. App'x at 163-64 (citing Horton, 496 U.S. at 141; United States v. Stabile, 633 F.3d 219, 240-42 (3d Cir. 2011); United States v. Menon, 24 F.3d 550, 559 (3d Cir. 1994)).

### 3. Standard of Review for Judicially Authorized Search Warrants

The "'task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that . . . evidence of a crime will be found in a particular place.'" Manafort, 314 F. Supp. 3d at 266 (quoting Gates, 462 U.S. at 238); see also United States v. Ali, 870 F. Supp. 2d 10, 25 (D.D.C. 2012); United States v. McCormick, Case No. 18-359-4, 2019 WL 3718944, at *2 (D.D.C. Aug. 7, 2019). On review, the magistrate's probable cause determination is entitled to "great deference." United States v. Spencer, 530 F.3d 1003, 1006 (D.C. Cir. 2008) (citing Gates, 462 U.S. at 236).

The Supreme Court has long held that such deference encourages officers to seek a warrant prior to executing a search. United States v Ventresca, 380 U.S. 102, 105-06 (1965) (noting that "the deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried actions of officers.")  As the D.C. Circuit has held, "[e]ven if we disagree with the judge's probable-cause determination after giving it 'great deference,' that disagreement alone does not justify exclusion of evidence. That is because the "exclusionary rule was adopted to deter unlawful searches by police, not to punish the errors of magistrates and judges.'" Spencer, 530 F.3d at 93 (quoting Massachusetts v. Sheppard, 468 U.S. 981, 990, (1984)). Thus, the duty of a reviewing court "'is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" Ali, 870 F. Supp. 2d at 25 (quoting Gates, 462 U.S. at 238-39).

### 4.    Good Faith Reliance on a Search Warrant

It is well established that law enforcement is entitled to rely on a magistrate's probable cause determination. United States v. Leon, 468 U.S. 897, 921 (1984). It is equally well established that "an officer cannot be expected to question the magistrate's probable-cause determination. . . ." Id., quoted in Spencer, 530 F.3d at 1006; see also United States v. Maxwell, 920 F.2d 1028, 1034 (D.C. Cir. 1990). As such, "[s]o long as the officer relied in objective good faith on the

issuing judge's determination, reviewing courts may not apply the exclusionary rule." <u>Spencer</u>, 530 F.3d at 1006-07. The <u>Spencer</u> Court noted that "the 'degree of police deference to the magistrate which is perceived by courts as reasonable under <u>Leon</u> exceeds significantly that 'great deference' owed the magistrate by reviewing courts under <u>Gates</u>.'" <u>Id</u>. at 1007 (quoting 1 Wayne R. Lafave, Search and Seizure § 1.3(f), at 97–98 (4th ed.2004) (footnote omitted). In short, police officers are "entitled to presume that the magistrate knows what he is doing." <u>Id</u>.

In cases where law enforcement relies on a warrant that is later determined to lack probable cause, the reviewing court must balance the deterrent value of excluding evidence against the fact that such exclusion unacceptably impedes the Court's truth-finding functions. <u>Leon</u>, 468 U.S. at 907; <u>United States v. Payner</u>, 447 U.S. 727, 734 (1980); <u>Stone v. Powell</u>, 428 U.S. 465, 490 (1976). As Judge Huvelle noted in <u>Ali</u>:

> When the police exhibit deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively reasonable good-faith belief that their conduct is lawful, or when their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and "exclusion cannot pay its way."

870 F. Supp. 2d at 24 (citing <u>Davis v. United States</u>, 564 U.S. 229, 237-40 (2011); <u>Herring v. United States</u>, 555 U.S. 135, 144 (2009), and quoting <u>Leon</u>, 468 U.S. at 908 n.6.). Consequently, the reviewing court must determine the objective reasonableness of the officers' reliance by considering "'whether a reasonably well-trained officer would have known that the search was illegal' in light of 'all of the circumstances.'" <u>Id</u>. (quoting <u>Herring</u>, 555 U.S. at 145; <u>Leon</u>, 468 U.S. at 922 n.23). As this Court has recognized, "[t]his good faith exception to the exclusionary rule applies not only when a reviewing court concludes that the affidavit in support of the warrant lacked probable cause, but also to warrant is later found to be overbroad." <u>Manafort</u>, 313 F. Supp. 3d at 236.

### 5. Conclusory Challenges to the Sufficiency of an Indictment Do Not Require an Evidentiary Hearing

Courts in this Circuit have clearly articulated that "it is a 'normal process' for a court to review the legal sufficiency of an affidavit to support probable cause without an evidentiary hearing." United States v. Bikundi, 125 F. Supp. 3d 178, 190 (D.D.C. 2015) (citing Massachusetts v. Upton, 466 U.S. 727, 728 (1984); United States v. Matthews, 753 F.3d 1421, 1326-27 (D.C. Cir. 2014)). This is true because "the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." Id. (quoting Gates, 462 U.S. at 236-39). Put another way, the sufficiency of a search warrant affidavit does not require the Court to resolve a "material factual dispute" and, absent such a factual dispute, an evidentiary hearing is not warranted. United States v. Villegas, 388 F.3d 317, 324 (7th Cir. 2004); United States v. Barrera, 843 F.2d 1576, 1581 (10th Cir. 1988) (noting that a "consideration of the probable cause showing must be based solely on the facts and circumstances presented in the affidavit when application for the warrant was made").

In order to justify an evidentiary hearing, the defendant's attack on the affidavit supporting the warrant "must be more than conclusory." United States v. Becton, 601 F.3d 588, 594 (D.C. Cir. 2010) (quoting Franks v. Delaware, 438 U.S. 154, 171 (1978)). Moreover, the defendant must tender allegations that "(1) the affidavit contained false statements; (2) the statements were material to the issue of probable cause; and (3) the false statements were made knowingly and intentionally, or with reckless disregard for the truth.'" Becton, 601 F.3d at 594 (quoting United States v. Richardson, 861 F.2d 291, 293 (D.C. Cir. 1988), and citing Franks, 438 U.S. at 155-56); see also United States v. Gaston, 357 F.3d 77, 80 (D.C. Cir. 2004).

### B. SEARCH WARRANT 2025 CSWSLD 00787

HINNANT first argues that the fruits of Search Warrant 2025 CSWSLD 00787 must be suppressed because the warrant fails to meet the particularity requirement.  HINNANT Residential, at 3.  This argument is without merit.

As an initial mater, HINNANT lacks standing to challenge the search of 4313 Wheeler Road, Southeast, Apartment 103.  It is well settled that "[t]he Fourth Amendment protects the people against unreasonable searches of 'their' effects, and an accused in a criminal case may not assert the Fourth Amendment rights of a third party. United States v. Stringer, 739 F.3d 391, 396 (2014) (citing Rawlings v. Kentucky, 448 U.S. 98, 104-06 (1980); Rakas v. Illinois, 439 U.S. 128, 133-38 (1978) (emphasis added)).  Consequently, an accused has no standing to challenge a search unless he can "first establish that he personally has a legitimate expectation of privacy in the object that was searched." Id.  HINNANT clearly disclaimed residence at the apartment when speaking with officers and, in fact, did not reside there.

Nevertheless, HINNANT contends that he does have standing based on Judge Nichols' Opinion in United States v. Robinson, 2021 WL 2778556, *4 (D.D.C. July 1, 2021). HINNANT Residential, at 2.  This case does not help HINNANT's cause, however, because, in Robinson, Judge Nichols found that the defendant lacked standing to challenge the search warrant, despite the fact that he was a "very good friend" of the resident and a "frequent visitor" and "invited guest." These connections were insufficient because Defendant Robinson was not an overnight guest on the day of his arrest and did not have keys to the apartment. Robinson, 2021 WL 2778556, at *4.  HINNANT has not alleged that he was anything more than a "social guest" at the apartment which is plainly insufficient under the Supreme Court caselaw cited above and, indeed, insufficient to satisfy the case upon which he relies.  HINNANT's lack of standing should foreclose his motion to suppress.

Even if HINNANT does have standing, the search warrant is sufficiently particular and is supported by ample probable cause.  The affidavit in support of the Search Warrant 2025 CSWSLD 00787 begins by identifying the place to be searched as the "entire premises known as 4313 Wheeler RD SE #103 Washington, D.C. 20032." (Docket Entry 21-1), at 3. The affidavit also described the front door of that premises and the building within which it is located. Id.  Next, the affiant for the affidavit in question described his experience and training as a police officer regarding illegal narcotics and firearm possession. Id. The affidavit then noted that "[t]he purpose of the requested search warrant is to seize evidence relevant to a violation of, among other laws, District of Columbia Criminal Code, Section 45." Id. at 4.[4]

The affiant then described having viewed an Instagram video on February 21, 2025, at approximately 6:07 pm. The affiant recognized the Instagram handle as one that was utilized by other persons who "hang around the 4300 block of Wheeler Rd and the 900 block of Wahler Rd SE." Id. The affiant described the video as showing one unknown individual tasering another individual multiple times inside an apartment. The individual who was being tasered was eventually let out of the apartment by other unknown individuals. The affiant described that, in the background of the video, he "observed that there appeared to be a black colored Glock handgun with what appeared to be a 'giggle switch' attached to the rear of the slide." Id. at 5.  A "giggle switch" is a machinegun conversion device that "turns a semiautomatic handgun into a fully automatic machinegun." Id.  The affiant then described the peephole, deadbolt, and "screw holes

---

[4] Defendant contends that this citation renders the warrant void because the citation should have been to "Chapter 45" not "Section 45."  HINNANT Residential, at 3.  However, "'[M]inor clerical errors generally are not fatal to a search warrant.'" United States v. Burroughs, 882 F. Supp. 2d 113, 121 (D.D.C. 2012) (Kollar-Kotelly, J.) (quoting United States v. Walker, 867 F.3d 168, 172 (2d Cir. 2008); and citing United States v. Felder, 457 Fed. Appx. 316, 322 (4th Cir. 2011); see also United States v. Thorne, 548 F. Supp. 3d 70, 95-96 (D.D.C. 2021) (Howell, J.). Investigator Damron's drafting error was neither misleading nor confusing; indeed, HINNANT immediately identified his citation as a reference to the D.C. Criminal Code regulating the possession and use of firearms – which coincides with the entire subject matter of the affidavit.

for a door pull handle" that he observed on the interior of the apartment's front door during the video, as well as light gray flooring outside the front door that he saw when the door was opened to let the individual being tasered leave. Id.

The affiant then described seeing a second video posted to the same account on February 21, 2025, at approximately 7:19pm. The second video showed the same person that had been using a taser earlier in the evening tasering a different individual inside the same apartment. Id. During the second video, law enforcement observed a different firearm on a kitchen countertop inside the apartment, which had an extended magazine inserted into the firearm. Id. The affiant then described seeing a third video posted to the same account on February 22, 2025, at approximately 4:36am, where law enforcement observed the same person that had been using a taser earlier in the evening tasering a different individual in the stairwell of 4313 Wheeler Road, Southeast. Id.

The affidavit then described law enforcement's visit to 4313 Wheeler Road, Southeast, on February 22, 2025, to investigate that location and identify the apartment where the aforementioned videos were taken. Id. Based on law enforcement's examination of the stairwell, it was determined that Apartment 103 was the only apartment whose peephole, deadbolt, and door pull handle matched the orientation of those items that he observed in the videos. Law enforcement also knew and noted that 4313 Wheeler Road Southeast "is a well known drug building" and stated that it was likely that the two firearms observed were "stash guns" or "trap guns" that were being stored inside Apartment 103. Id. at 6.

Finally, the affidavit stated that the firearms he observed on the Instagram videos were real firearms and that they were located inside 4313 Wheeler Road, Southeast, Apartment 103, Washington, D.C. 20032. The affidavit specified the items to be seized as "Firearms, ammunition,

firearm accessories, and proof of residency." Id. at 6. This warrant meets both the probable cause and particularity requirements because it clearly identifies what items law enforcement seeks to search for and seize as well as the basis for believing that those items would be located within the apartment.

HINNANT nevertheless contends that Search Warrant 2025 CSWLD 00787 is overbroad because it references "nearly all DC firearms offenses" and identifies the items to be seized as firearms, ammunition, and firearm accessories. HINNANT Residential, at 3-4. HINNANT shrouds his overbreadth argument in the Second Amendment, contending that the warrant did not account for the fact that firearms may be legally possessed. HINNANT Residential, at 4. This argument overlooks that D.C. Code requires that all firearms be registered and that unregistered firearms may not be legally possessed by anyone. D.C. Code § 7-2502.01. The affidavit details, at length, steps taken by law enforcement to ensure that there were no lawfully possessed firearms in the residence before seeking the warrant; thus, his request to search for all firearms located in the residence was not overbroad. This is particularly true when the items to be seized are read in conjunction with the affidavit's citation to the D.C. Criminal Code governing unlawful possession of firearms. Though it may have been drafted more artfully, the clear, stated intent of the warrant was to search for and seize any firearms that were not legally possessed.

HINNANT next argues that the Court should suppress the fruits of three cellular telephones because the seizure of those phones exceeded the scope of the warrant. HINNANT Residential, at 5-6. This argument is without merit because the cellular telephones were properly seized under the plain view doctrine. Items may be seized under the plain view doctrine if the officers are lawfully present in the place where they viewed the item, the item's incriminating character was immediately apparent, and the officer had a lawful right of access to the viewed item itself. Horton

v. California, 496 U.S. 128, 136-37 (1990); Coolidge v. New Hampshire, 403 U.S. 443, 465-66 (1971); United States v. Pindell, 336 F.3d 1049, 1054-56 (D.C. Cir. 2003).  Here, the officers were lawfully present inside the apartment – executing a search warrant – and had lawful access to the cellular telephones in question.  Moreover, the incriminating nature of the cellular telephones was immediately apparent because the officers had already seized narcotics and a firearm and cellular telephones are well known tools of the drug trade.  See, e.g., United States v. Anderson, 2024 WL 4198673, at *7 (N.D. Indiana Sept. 16, 2024) (citing United States v. Portalla, 496 F.3d 23, 27 (1st Cir. 2007); United States v. Slater, 971 F.2d 626, 637 (10th Cir. 1992); United States v. Delva, 13 F. Supp. 3d 269, 277 (S.D.N.Y. 2014); United States v. Garcia, 2023 WL 4850553, at *7 n.4 (D. Conn. July 28, 2023)).

Search Warrant 2025 CSWLD 00787 is sufficient on its face because it is supported by probable cause to believe that firearms were present inside the 4313 Wheeler Road, Southeast, Apartment 103, and that those firearms were not possessed legally pursuant to the D.C. Code. Gates, 462 U.S. at 231. The warrant also satisfied the particularity requirement without being overbroad because it identified the specific offenses for which probable cause was established, described the place to be searched, and it specified the items to be seized.  In the Matter of Search of [Redacted] Washington, District of Columbia, 317 F. Supp. 3d at 527 n.3; see also Galpin, 720 F.3d at 446; Williams, 592 F.3d at 519.

Furthermore, even if there was an error in the warrant, law enforcement was entitled to rely on the warrant in good faith.[5]  The affidavit was presented to a Judge of the Superior Court of the District of Columbia who reviewed and signed the warrant.  (Document 21-1), at 2, 7.  Investigator

---

[5] As this Court has recognized, "[t]his good faith exception to the exclusionary rule applies not only when a reviewing court concludes that the affidavit in support of the warrant lacked probable cause, but also to warrant is later found to be overbroad." Manafort, 313 F. Supp. 3d at 236.

Damron was entitled to assume that the reviewing Judge knew what they were doing. Spencer, 530 F.3d at 1007.  Even if this Court were to find a flaw in the warrant, the policy interest in excluding the seized evidence is very low because Investigator Damron was acting in the good faith belief that what he was doing was lawful.  Davis, 564 U.S. at 237-40; Herring, 555 U.S. at 144; Leon, 468 U.S. at 908 n. 6.

Finally, HINNANT has failed to demonstrate that he is entitled to an evidentiary hearing on Search Warrant 2025 CSWLD 00787.  HINNANT's motion merely asks the Court to review the face of the warrant itself, and such a review does not require a hearing. Bikundi, 125 F. Supp. 3d at 190. HINNANT does not allege that the affidavit contains any knowingly false statements which were material to the finding of probable cause. As such, it would be inappropriate to conduct an evidentiary hearing with regard to this warrant. Franks, 438 U.S. at 155-56; Becton, 601 F.3d at 594; Richardson, 861 F.2d at 293.

### C.    DNA SEARCH WARRANT – DOCKET ENTRY 22

HINNANT moves to suppress the DNA Search Warrant because—despite articulating that HINNANT possessed a firearm and distribution quantities of narcotics as support for the search— the affidavit mistook his prior misdemeanor for a felony prohibiting his possession of a firearm. HINNANT's argument is unavailing. "It is not necessary for an affidavit to include the name of the specific crime alleged." United States v. Summage, 481 F.3d 1075, 1079 (8th Cir. 2007). Rather, a warrant need only show a probability of criminal conduct. Id. The DNA Search Warrant provided probable cause that HINNANT committed the offense of possessing a firearm in furtherance of drug trafficking, and that evidence of this offense would be found in his DNA.[6]

---

[6] This is a violation of 18 U.S.C. 924(c) (Use, Carry or Possession of a Firearm During, in Relation to, or in Furtherance of, a Drug Trafficking Offense) and 22 D.C. Code, Section 4504(b) (Possession of A Firearm during a Crime of Violence or Dangerous Offense).

Having made this threshold showing, any error relating to HINNANT's criminal history is neither material nor fatal to the search warrant.

1.  **HINNANT Cannot Satisfy His Burden of Proving a Material Misrepresentation by Manufacturing a Non-Existent Requirement that a Warrant Specify a Particular Criminal Offense.**

To justify a *Franks* hearing, HINNANT must make "[(1)] a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and (2) the allegedly false statement is necessary to the finding of probable cause." United States v. Rajaratnam, 2010 WL 4867402, at * 8 (SDNY Nov. 24, 2010). HINNANT has shown neither.

At most, HINNANT's cited case law cautions against warrants authorizing general searches without limitation but is not prohibitive of the narrowly tailored search warrant seeking to compare HINNANT's DNA to DNA retrieved from a firearm located near HINNANT. HINNANT contorts this prohibition on general searches into a non-existent constitutional requirement that search warrants precisely specify the offense giving rise to the warrant request. HINNANT DNA at 4. However, "The Fourth Amendment 'specifies only two matters that must be particularly describe[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized'" United States v. Fumo, 565 F. Supp. 2d 638, 644 (E.D. Pa. 2008) (quoting United States v. Grubbs, 547 U.S. 90, 97 (2006)). As Judge Kozinski explained in a concurring opinion, the constitution does not require a warrant specify the precise statute violated.

> Second, I am aware of no constitutional requirement that an applicant for a warrant specify, and the judge determine, the precise statute violated; all authority is to the contrary. See 1 W. Lafave, *Search and Seizure* § 3.1 at 545 & n. 25 (2d ed. 1987) ("it need not be certain precisely what crime was committed."). As the Supreme Court has stated, 'the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, … there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct.

2317, 2332, 76 L.E.2d 527 (1983).

United States v. Koyomejian, 970 F.2d 536, 548 (9th Cir. 1992) (Kozinski, J., concurring). Indeed,

"The Supreme Court has 'rejected efforts to expand the scope of [the Fourth Amendment's

particularity requirement] to embrace unenumerated matters." Fumo, 565 F.Supp.2d at 644.

In keeping with this principle, courts regularly deny motions to suppress warrants for

failure to specify the underlying criminal offense justifying the search. *See, e.g.,* United States v.

Summage, 481 F.3d 1075, 1079 (8th Cir. 2007) (search warrant) ("Although the affidavit did not

specifically name the crime that had been committed, the alleged facts support a finding of

probable cause to believe that Summage's actions constituted criminal conduct—specifically the

solicitation of prostitution or pandering—given the fact that Summage had offered money in

exchange for Doe's services in a sex act."); United States v. Meek, 366 F.3d 704 (9th Cir. 2004)

(search warrant) ("Related to the issue of probable cause is whether the AOL warrant is invalid

simply because the statute Meek violated—California Penal Code § 288.2(b)—differed from the

statute listed in the affidavit—California Penal Code § 311.3. We conclude that it is not."); United

States v. Felix, No. 2:19-cr-00080, 2021 WL 4482981, *8 (D. Vt. Sept. 30, 2021) (arrest warrant)

("The court agrees with the government that the 'substantial rights' of Defendant Ford were not

affected by any difference between the crime at issue in the arrest warrant and Dalla Mura

Affidavit."); United States v. Winn, 79 F. Supp.3d 904, 916-17 (S.D. Ill. 2015) (search warrant)

(Concluding that the fact that the warrant listed an incorrect offense was not fatal to the warrant's

validity because probable cause existed to issue the warrant for the actual offense.); United States

v. Fumo, 565 F.Supp.2d 638, 644 (E.D. Pa. 2008) (search warrant) ("First, Fumo asserts that the

warrant is insufficiently particular because the magistrate judge who issued the warrant failed to

specify the particular crimes for which the agents were authorized to search …. Because a search

warrant need not specify the particular crimes for which evidence is sought, the warrant is not defective on this basis.").

The HINNANT DNA warrant could have been sought and subsequently issued without specifying any underlying criminal offense. It merely needed to articulate probable cause that HINNANT possessed a firearm in furtherance of a drug trafficking offense, which the warrant did. It follows that, the warrant's mistaken characterization of HINNANT's prior misdemeanor as a felony was not material. Had it been removed from the affidavit, probable cause would still exist for the search. "[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." Franks v. Delaware, 438 U.S. 154, 171-72 (1978). HINNANT is not entitled to a *Franks* hearing.

### 2. Office Minzak Operated in Good Faith

Officer Minzak had no incentive to mislead the court. At the time he applied for the warrant, he had probable cause that HINNANT possessed a firearm in furtherance of drug trafficking and articulated those facts in his affidavit. Officer Minzak simply failed to mention the statute.[7] Indeed, HINNANT's motion primarily accuses Office Minzak of mistaking HINNANT's criminal history "with reckless disregard for the truth." HINNANT DNA at 8.

"The Supreme Court in Franks did not define the term 'reckless disregard' other than to state that '[a]llegations of negligence or innocent mistake are insufficient.'" Rajaratnam, 2010 WL 4867402, at * 8 (citing Franks, 430 U.S. at 171.). The D.C. Circuit has embraced a subjective test for recklessness, which inspects whether the affiant entertained serious doubts as to the truth of his

---

[7] On December 23, 2025, the government secured a second search warrant for HINNANT's DNA that mentioned his 924(c) violation. Magistrate Judge Harvey issued the warrant. The government executed the warrant and produced this warrant to defense counsel on December 30, 2025.

statement. United States v. Davis, 617 F.2d 677, 694 (D.C.C. 1979). This subjective test may be met by demonstrating that there existed obvious reasons to doubt the accuracy of the statement. Id.

Officer Minzak's confusion of a misdemeanor for a felony offense is of a legal, not a factual, nature. HINNANT was originally charged in 2020 CF2 004007 with four substantive violations, including a violation of 22 D.C. Code, Section 4504(a)(1) (Carrying a Pistol Without a License (Outside Home or Place of Business)). This violation carries a term of imprisonment of not more than 5 years, a penalty which is specified in the underlying statute. Ultimately, HINNANT pled to attempting the offense of Carrying a Pistol Without a License. The penalty for this attempt offense is laid out in a different section of the D.C. Code, namely 22 D.C. Code § 1803, which includes the below legal jargon and cross references:

> Whoever shall attempt to commit any crime, which attempt is not otherwise made punishable by chapter 19 of An Act to establish a code of law for the District of Columbia, approved March 3, 1901 (31 Stat. 1321), shall be punished by a fine not more than the amount set forth in § 22-3571.01 or by imprisonment for not more than 180 days, or both. Except, whoever shall attempt to commit a crime of violence as defined in § 23-1331 shall be punished by a fine not more than the amount set in § 22-3571.01 or by imprisonment for not more than 5 years, or both.

Officer Minzak is not a lawyer. In his affidavit, he wrote that HINNANT "was previously convicted of a crime for which the penalty exceeds one year of imprisonment (2020 CF2 4007)." His inclusion of the case number demonstrates absence of ill intent. His is an easy mistake to make, particularly because the "CF2" designation is for felony cases. Most federal attempt crimes carry the same penalties as the substantive offense.[8] His error does not rise to the level of recklessness,

---

8 *Charles Doyle, R42001, Attempt: An Overview of Federal Criminal Law, Congressional Review Services (Apr. 11, 2025); See also,* 21 U.S.C. § 846 (attempted drug offenses); 18 U.S.C. §§ 32(a) (attempted destruction of aircraft or their facilities), *id.* § 1594(a) (attempts to commit certain human trafficking offenses). In many instances, attempt is interwoven with the elements of the underlying offense. *E.g., id.* § 844(f)(1) (destruction of U.S. property) ("Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive . . . shall be imprisoned for not less than 5 years and not more than 20 years, fined under this title, or both."); *id.* § 1956(a)(1)

particularly given that the warrant would still contain probable cause even without mention of HINNANT's criminal history.

WHEREFORE, the United States respectfully submits that Defendant HINNANT's Motion to Suppress the DNA Search Warrant (Docket Entry 22) should be DENIED without a hearing.

### D.    <u>SEARCH WARRANT 25-SW-54</u>

HINNANT contends that the fruits of Search Warrant 25-SW-54 must be suppressed because the warrant failed to establish a nexus between the charged offenses and the seized cellular telephones. <u>HINNANT Cell Phone</u>, at 1-7. This argument is without merit.

The affidavit in support of Search Warrant 25-SW-54 begins by identifying the items to be searched as three cellular telephones seized during the execution of a search warrant. (Docket Entry 23-1), ¶ 1. The affidavit then identifies the affiant as ATF Special Agent Ann Lohman. <u>Id</u>. ¶¶ 4-8. The affidavit then articulates two target offenses: "21 U.S.C. § 841(a) (Distribution and Possession with Intent to Distribute Controlled Substances); and 18 U.S.C. § 924(c) (Using, Carrying, and Possessing a Firearm During, in Relation to, and in Furtherance of a Drug Trafficking Crime)." <u>Id</u>. ¶ 9.

The affidavit noted that Search Warrant 2025 CSWLD 00787 was executed at approximately 5:23pm on March 4, 2025. <u>Id</u>. ¶ 12. Officers first knocked and announced their presence and then made entry. When they entered, they observed HINNANT standing in the living room area near a couch which was pushed up against a wall. <u>Id</u>. ¶ 13. Officers discovered a Glock, model 23, .40 caliber semi-automatic handgun in the area between the couch and the wall near

---

(money laundering) ("Whoever . . . conducts or attempts to conduct such a financial transaction . . . shall be sentenced to a fine of not more than $500,000 . . . or imprisonment for not more than twenty years, or both.").

where HINNANT was standing, and a security sweep revealed that no one else was inside the apartment. Id. ¶ 14. Officers also recovered additional firearm magazines and ammunition in calibers other than .40 caliber – indicating that other firearms had been present in the apartment at a prior time. Id. ¶ 15.

Next, the affidavit noted the discovery of a digital scale covered in white powdery residue and multiple small bags containing both white powder and a white, rocklike substance. Id. ¶¶ 16-17. The affidavit noted that the substances field-tested positive for the presence of cocaine, cocaine base, and opioids, and further noted the discovery of suboxone strips and a small glass vial containing suspected PCP. Id. ¶¶ 17-18. The affidavit noted that HINNANT was searched, resulting in the recovery of $219 and one cellular telephone. Id. ¶¶ 19, 21. The other cellular telephones were seized from inside the apartment during the search. Id. ¶ 10.

In addition to connecting the cellular telephones to the location where drugs and a gun were found, the affidavit provided additional bases for believing that they would contain evidence of the identified offenses. First, the affidavit noted that, in Special Agent Lohman's training and experience, cellular telephones could be used to determine a person's location – a fact which was relevant to tying HINNANT to the search location where the drugs and gun were discovered. Id. ¶ 22. Next, the affidavit noted that, in Special Agent Lohman's experience, persons who distribute or possess controlled substances frequently use text messaging and other applications to "facilitate the exchange of controlled substances." Id. ¶ 23. Next, the affidavit articulated Special Agent Lohman's experience that persons who engage in the distribution, or possession with intent to distribute controlled substances, also possess firearms and also that persons who possess firearms frequently take pictures of themselves with their firearms using their cellular telephone. Id. ¶ 23. In essence, Special Agent Lohman was noting what numerous Courts have found – that cellular

telephones are critical tools of the drug trade. See, e.g., Portalla, 496 F.3d at 27; Slater, 971 F.2d at 637; Delva, 13 F. Supp. at 277; Anderson, 2024 WL 4198673, at *7; Garcia, 2023 WL 4850553, at *7 n.4. Search Warrant 25-SW-54 provided a sufficient nexus between the cellular telephones and the target offenses.

Next, HINNANT argues that the search warrant was overbroad because cellular telephones contain "a wide array of personal data" which could be searched "without regard for any temporal limitation." HINNANT Cell Phone, at 5. Courts have repeatedly rejected this argument; holding that warrants authorizing the search of electronic data are not "overbroad" simply because they allow law enforcement to search the entirety of that data for evidence of a specified criminal offense. See United States v. Williams, 592 F.3d 511, 521-23 (4th Cir. 2010) (noting that "the sheer amount of information contained on a computer does not distinguish the authorized search of the computer from an analogous search of a file cabinet containing a large number of documents"); see also United States v. Skinner, 2021 WL 1725543, at **15-16 (E.D. Va. 2021); United States v. Karrer, 260 F. App'x 157, 161 (3d Cir. 2012) (citations omitted). Here, the warrant was not overbroad because it specifically identified the items that could be seized and the agents had no discretion to deviate from that list. United States v. Ginyard, 628 F. Supp. 3d 31, 48 (D.D.C. 2022) (Kollar-Kotelly, J.) (citing Williams, 592 F.3d at 519).

Moreover, even if there was an error in the warrant, law enforcement was entitled to rely on the warrant in good faith.[9] The affidavit was presented to a United States Magistrate Judge who reviewed and signed the warrant. (Document 23-1), at 1. Special Agent Lohman was entitled to assume that the Magistrate Judge knew what they were doing. Spencer, 530 F.3d at 1007.

---

[9] As this Court has recognized, "[t]his good faith exception to the exclusionary rule applies not only when a reviewing court concludes that the affidavit in support of the warrant lacked probable cause, but also to warrant is later found to be overbroad." Manafort, 313 F. Supp. 3d at 236.

Furthermore, even if this Court were to find a flaw in the warrant, the policy interest in excluding the seized evidence is very low because Special Agent Lohman was acting in the good faith belief that what she was doing was lawful.  Davis, 564 U.S. at 237-40; Herring, 555 U.S. at 144; Leon, 468 U.S. at 908 n. 6.

Finally, HINNANT has failed to demonstrate that he is entitled to an evidentiary hearing on Search Warrant 25-SW-54.  HINNANT's motion merely asks the Court to review the face of the warrant itself, and such a review does not require a hearing. Bikundi, 125 F. Supp. 3d at 190. HINNANT does not allege that the Special Agent Lohman's affidavit contains any knowingly false statements which were material to the finding of probable cause. As such, it would be inappropriate to conduct an evidentiary hearing with regard to this warrant. Franks, 438 U.S. at 155-56; Becton, 601 F.3d at 594; Richardson, 861 F.2d at 293.

## CONCLUSION

WHEREFORE, the United States respectfully requests Defendant HINNANT'S Motion to Suppress Fruits of Warrantless Search and Seizure (Docket Entry 19); Motion to Sever Counts (Docket Entry 20); Motion to Suppress Fruits of Residential Search Warrant (Docket Entry 21); Motion to Suppress Fruits of DNA Search Warrant and Request for Franks Hearing (Docket Entry 22); and Motion to Suppress Fruits of Cell Phone Search Warrant (Docket Entry 23) be DENIED.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By:     /s/  Colleen Bloss
        Colleen Bloss
        TX Bar No. 24082160
        Assistant United States Attorney
        Violent Crime and Narcotics Trafficking Section
        601 D Street, N.W.
        Washington, D.C. 20530

(202) 252-7063
colleen.bloss@usdoj.gov


By:     */s/  James B. Nelson*
        JAMES B. NELSON
        D.C. Bar No. 1613700
        Assistant United States Attorney
        Violent Crime and Narcotics Trafficking Section
        601 D. Street, N.W.
        Washington, D.C. 20530
        (202) 252-6986
        james.nelson@usdoj.gov